FILED
2020 Jul-24  AM 10:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

PAMELA TACKETT,      )
                      )
      Plaintiff,      )
                      )
v.                    )     Case No. 3:19-cv-1356-HNJ
                      )
COMMISSIONER, SOCIAL     )
SECURITY ADMINISTRATION,   )
                      )
      Defendant.     )

## MEMORANDUM OPINION

Plaintiff Pamela Tackett seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding her claims for a period of disability and disability insurance benefits.  The undersigned has carefully considered the record, and for the reasons expressed herein, the court **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment.

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id.* at § 404.1520(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 1.00-114.02. *Id.* at § 404.1520(d). If a claimant's

impairment meets the applicable criteria at this step, that claimant's impairment would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment. *See Williams v. Astrue*, 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. § 404.1520; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work. 20 C.F.R. § 404.1520(e). At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work. *See id.* § 404.1520(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled. *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work. 20

C.F.R. § 404.1520(g).  If the claimant can perform other work, the evaluator will not find the claimant disabled.  *See id.* § 404.1520(a)(4)(v); *see also* 20 C.F.R. § 404.1520(g). If the claimant cannot perform other work, the evaluator will find the claimant disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'"  *Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ.  *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (citations omitted).  Nonetheless, substantial evidence exists even if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Ms. Tackett, age 43 at the time of the last ALJ hearing, protectively filed an application for a period of disability and disability insurance benefits on July 25, 2012, alleging disability as of July 9, 2012. (Tr. 12, 210). The Commissioner denied her claims, and Tackett timely filed a request for hearing on October 2, 2012. (Tr. 84-97, 106-07). An Administrative Law Judge ("ALJ") held hearings on May 9, 2013, and January 10, 2014. (Tr. 24-83). The ALJ issued an opinion on February 7, 2014, denying Tackett's claim. (Tr. 12-23).

Tackett timely requested review of the ALJ's decision. (Tr. 8). On August 28, 2015, the Appeals Council denied review, which deemed the ALJ's decision as the Commissioner's final decision. (Tr. 1-4). On September 22, 2015, Tackett filed a Complaint with the court seeking review of the ALJ's decision. (Doc. 1 in Case No. 3:15-cv-01654-RDP). On August 26, 2016, United States District Judge R. David Proctor found the ALJ rejected the opinion of Tackett's treating physician without good cause, and thus, the ALJ's rejection deprived his credibility determination of substantial evidentiary support and rendered incomplete his hypothetical question to the vocational expert. Judge Proctor remanded the case to the Commissioner for further administrative proceedings. (Tr. 549-64; Docs. 11& 12 in Case No. 3:15-cv-01654-

RDP).[2]  The Appeals Council, in turn, remanded Tackett's case to the same ALJ who issued the initial decision.  (Tr. 565-68).

The ALJ held a hearing on October 2, 2017 (Tr. 456-520), and he issued an opinion on April 20, 2018, again denying Tackett's claim.  (Tr. 390-422).

Applying the five-step sequential process, the ALJ found at step one that Tackett did not engage in substantial gainful activity after July 9, 2012, the alleged onset date. (Tr. 393).  At step two, the ALJ found Tackett had the severe impairments of

> degenerative disk disease of the cervical spine, and is status post anterior cervical discectomy and fusions; degenerative disc disease of the thoracic and lumbar spine; degenerative joint disease of the right hip; degenerative joint disease of the right knee; history of headaches; [and] depression and anxiety.

(*Id.*).  At step three, the ALJ found that Tackett's impairments, or combination of impairments, did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*).

Next, the ALJ found that Tackett exhibited the residual functional capacity ("RFC") to perform a range of light work, as defined in 20 C.F.R.§ 404.1567(b), with the following restrictions:

> [T]he claimant can occasionally lift and/or carry, including upward pulling

---

[2] On September 11, 2015, after she filed her first appeal to this court, Tackett filed another application for a period of disability and disability insurance benefits.  (Tr. 772-77).  The Commissioner initially denied that application, and Tackett filed a timely request for an ALJ hearing.  (Tr. 637-43).  The Commissioner dismissed the request for a hearing after noting the remand of the first appeal. (Tr. 390).  The ALJ considered the evidence associated with Tackett's second application, and it forms part of the record currently before the court.

of 20 pounds, and frequently lift and/or carry 10 pounds.  She can sit for 6 hours during the 8-hour workday, but cannot sit for longer than one-hour at one time with the ability to stand for one to two minutes and remain on tasks.  She can stand for 3 hours during an 8-hour workday, but for no more than 40 minutes at a time.  She can walk for 3 hours during an 8-hour workday, but cannot walk for more than 30 minutes without interruption.  She cannot walk on uneven surfaces.  She can frequently use her hands for reaching, but cannot do any overhead reaching.  She has no limitations in the upper extremities for gross or fine handling tasks.  She can occasionally climb stairs with railings.  She can occasionally crouch and stoop.  She cannot climb any ladders, ropes, or scaffolds.  She cannot do any jobs that require exposure to vibrations.  She cannot do any crawling or kneeling.  She cannot be around exposure to extreme cold temperatures.  She should avoid repeatedly twisting the cervical spine. The claimant can understand, and remember and carry out simple instructions, and can concentrate and stay on tasks for two-hour periods across an eight-hour work-day, five[]-day workweek, with all customary work breaks.  She can have occasional contact with the general-public, coworkers and supervisors.  She should not perform assembly line type of work, and she should be pai[d] by the hour and not by piecework.  She should work with things as opposed to people[.]

(Tr. 397).

At step four, the ALJ determined Tackett did not retain the ability to perform her past relevant work as an installer.  (Tr. 420).  At step five, the ALJ determined Tackett could perform a significant number of other jobs in the national economy considering her age, education, work experience, and RFC.  (Tr. 420-22).  Accordingly, the ALJ determined that Tackett did not suffer a disability, as defined by the Social Security Act, since July 9, 2012.  (Tr. 422).

Tackett timely requested review of the ALJ's decision.  (Tr. 770-71).  On March 28, 2019, the Appeals Council again denied review, which again deemed the ALJ's

decision as the Commissioner's final decision.   (Tr. 381-85).   On August 20, 2019,

Tackett filed her current Complaint with the court seeking review of the ALJ's decision.

(Doc. 1).[3]

## ANALYSIS

In this appeal, Tackett argues that the ALJ failed to accord proper weight to her

treating physician and failed to properly evaluate her complaints of subjective

symptoms.   For the reasons discussed below, the undersigned concludes neither of her

contentions warrants reversal.

## I.   The ALJ Properly Considered The Treating Physician's Opinion

Tackett argues the ALJ improperly considered the opinions of Dr. Keith

Morrow, her primary care physician.   As discussed below, the ALJ clearly articulated his

reasons for affording little to no weight to Dr. Morrow's assessments of disabling

limitations, and good cause existed for the ALJ's decision.

The ALJ must give "substantial or considerable weight" to the opinion of a

treating physician "unless 'good cause' is shown." *Phillips v. Barnhart*, 357 F.3d 1232,

1240 (11th Cir. 2003) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

Good cause exists when: (1) the evidence did not bolster the treating physician's

opinion; (2) the evidence supported a contrary finding; or (3) a treating physician's

---

[3] The Appeals Council granted Tackett an Extension of Time Within Which to Commence a
Civil Action.  (Tr. 431-35).

opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* An ALJ must clearly articulate the reasons for affording less weight to a treating physician's opinions. *Id.* An ALJ does not commit reversible error when (1) he articulates specific reasons for declining to give the treating physician's opinion controlling weight, and (2) substantial evidence supports these findings. *Moore*, 405 F.3d at 1212.

To determine the weight given to any medical opinion, an ALJ must consider several factors, including the examining relationship, the treatment relationship, the evidence presented to support the opinion, the consistency of the opinion with other evidence, and the specialization of the medical professional. 20 C.F.R. §404.1527(c); *see Davis v. Comm'r of Soc. Sec.*, 449 F. App'x 828, 832 (11th Cir. 2011) (stating that the ALJ will give more weight to the medical opinions of a source who has examined the plaintiff and opinions that are supported by medical signs and findings and are consistent with the overall "record as a whole"). The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. *Hearn v. Comm'r of Soc. Sec.*, 619 F. App'x 892, 895 (11th Cir. 2015) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

Dr. Morrow completed a Patient Functional Questionnaire on May 6, 2013. He indicated he had treated Tackett on 25 to 30 occasions over the past five years, and he detected no signs of malingering. He identified Tackett's medical conditions as degenerative disc disease of the cervical and lumbosacral spine, chronic pain syndrome,

status post three cervical spine surgeries, and headaches.  He opined Tackett could sit for two hours at a time, and for a total of one to two hours in an eight-hour workday. She could stand less than one hour at a time, and for a total of one hour in an eight-hour workday.  She could walk for less than one hour at a time, and for a total of one hour in an eight-hour workday.  She would need to lie down two to three hours during the day, and she would miss 50 or more days of work each year because of her conditions.  (Tr. 348-49).

Dr. Morrow also provided a "Sworn Statement" on May 6, 2013, which consisted of a transcription of his ex parte sworn verbal responses to questions from Tackett's attorney.   Dr. Morrow testified that he had advised Tackett she could not perform any kind of work activity.  He also reiterated his findings on the Patient Functional Questionnaire, and he explained that the totality of Tackett's medical conditions could reasonably produce the limitations he identified.  He stated that a syrinx and herniated disc at Tackett's thoracic spine would place pressure on her spinal cord, causing progressive pain and eventual dysfunction of her legs.  He also opined that Tackett's headaches related to her history of cervical spine surgeries.  He expected Tackett's spinal problems to progress over time, potentially requiring future surgeries.  He did not expect significant improvement in her condition, and he did not believe she could make it through a full workday.  He treated Tackett with muscle relaxers, Neurontin, painkillers, and medications for muscle spasms and twitches.  (Tr. 352-74).

Dr. Morrow completed a Functional Capacity Assessment form on September 15, 2016. He indicated he had treated Tackett monthly for ten years, and he detected no signs of malingering. Tackett suffered from back, neck, and right hip pain. She could sit for one hour at a time, and for a total of two to three hours in an eight-hour workday. She could stand and/or walk for fifteen minutes at a time, and for a total of two to three hours in an eight-hour workday. She would need to lie down two to three hours every day. She could occasionally lift up to 20 pounds, but she could never lift any additional weight. She would miss an "unknown" number of days of work each year due to her medical conditions. (Tr. 1100-03).

Dr. Morrow completed another Functional Capacity Assessment on April 26, 2017. He indicated he had treated Tackett more than 75 times over more than ten years, and he detected no signs of malingering. He stated Tackett suffered from chronic neck pain with three past neck surgeries, back pain as a result of degenerative disc disease, chronic anxiety and depression, and headaches. Tackett could sit for one to two hours at a time, and for a total of two to three hours in an eight-hour workday. She could stand and/or walk for less than one hour at a time, and for a total of one hour in an eight-hour workday. She would need to lie down two to three hours each day. She could occasionally lift up to ten pounds, rarely lift up to 20 pounds, and never lift more than 20 pounds. She would miss more than 50 days of work each year because of her medical conditions. (Tr. 1165-67).

11

Dr. Morrow also provided a second Sworn Statement on April 26, 2017.  He described Tackett's gait as cautious and slower than most people her age, but she did not walk with a limp.  He stated that Tackett's three neck surgeries, even if successful, could have left her with painful scar tissue.  He testified Tackett had consistently complained of pain at a level five to ten for the previous ten years.  He expected her condition to decline over time, and he opined that she needed a lower spine surgery. He testified Tackett's alleged limitations would reasonably result from her medical conditions, and he did not detect any signs of malingering.  He treated Tackett with muscle relaxers and other medications for pain and neuropathy.  He characterized Tackett's pain medication as an "aggressive dose," but he noted she had taken the same dosage for "years."  (Tr. 1198).  Dr. Morrow opined Tackett could not complete an eight-hour workday without being allowed to lie down during the day.  (Tr. 1169-1201).

The ALJ afforded Dr. Morrow's opinions little weight because the opinions consisted primarily of "circle" and "fill-in-the-blank" forms, and they lacked evidentiary support in Dr. Morrow's own records and the other medical evidence.  The ALJ also refused to credit Dr. Morrow's conclusions about Tackett's ability to work because those decisions rest solely with the Commissioner, not with a medical professional. (Tr. 410-13).  *See Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("[T]he task of determining a claimant's . . . ability to work is within the province of the ALJ, not of doctors.").

The ALJ thereby satisfied the requirement of articulating good cause for rejecting Dr. Morrow's opinions.  Applicable law and substantial record evidence support the ALJ's decision.

The ALJ painstakingly examined Dr. Morrow's treatment notes in conjunction with his functional capacity questionnaires and sworn statements.[4]  (R. 403-10).  Dr. Morrow and/or his nurses treated Tackett on a monthly basis since at least May 2011.[5] (R. 403).  However, as the ALJ noted, Dr. Morrow's records do not include any detailed descriptions of Dr. Morrow's examinations or detailed explanations of Tackett's pain complaints.

Rather, the vast majority of Dr. Morrow's records consist of single-page forms where he noted complaints such as neck pain, back pain, or headaches; circled descriptions of certain symptoms; only sometimes identified Tackett's pain level; noted referrals; and refilled pain medications.  (Tr. 294-303, 339-46, 1027-69, 1086-99, 1151-63, 1223-26, 1251-54).  While Social Security regulations state that "[t]he better an explanation a source provides for a medical opinion, the more weight we will give that

_____

[4] As discussed by the ALJ, Dr. Morrow's two sworn statements essentially equate to ex parte depositions by Tackett's attorney.  (Tr. 352-75, 1169-1201).  The attorney asked mostly leading questions, and Dr. Morrow provided short answers with little explanation.  The court agrees with the ALJ that the statements carry little probative value and shed little light on the reasoning for Dr. Morrow's opinions.  (Tr. 405, 408).

[5] The ALJ noted that Dr. Morrow probably began seeing Tackett before that date, but a tornado destroyed all his records in April 2011.  (Tr. 403).

13

medical opinion," 20 C.F.R. § 404.1527(c)(3), the Eleventh Circuit recently clarified that an ALJ should not discount a physician's opinion simply because he checked boxes on a pre-prepared form. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1262 (11th Cir. 2019). Rather, an ALJ should interpret treating physicians' "answers to the questionnaires in light of their treatment notes." *Id.* Here, Dr. Morrow's treatment records provide little additional support for his conclusory opinions.

Notably, Dr. Morrow did not describe specific limitations on Tackett's ability to work, and he consistently described her as alert and oriented despite her complaints of pain. Where a treating physician's findings lack support from the physician's treatment notes and other objective evidence, good cause exists to discount the physician's opinion. *See, e.g., Anderson v. Comm'r, Soc. Sec. Admin.*, 441 F. App'x 652, 653-54 (11th Cir. 2011) (objective evidence did not support treating physician's findings where treatment notes merely provided a diagnosis or documented the claimant's subjective complaints); *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 740 (11th Cir. 2008) (good cause existed for ALJ to discredit treating physician's opinions where nothing in his treatment notes indicated the claimant's conditions precluded her from working).

The ALJ also found that Dr. Morrow's opinions lacked consistency with the other objective medical evidence. The ALJ relied on the medical records and opinions from multiple other physicians in supporting his decisions to discount and disregard Dr. Morrow's opinions. (Tr. 408-19). Specifically, the ALJ concluded that the

14

examinations and treatment notes from Drs. Lindsey, Johnson and Norwood "provide a much better picture of [Tackett's] actual impairments and functioning than does the limited information contained in Dr. Morrow's records." (Tr. 419).

The ALJ gave significant weight to the examinations and findings of Dr. John Johnson, Tackett's treating neurologist. (Tr. 399, 400, 419). Dr. Johnson first treated Tackett in August 2012, and he noted her history of three previous cervical spine surgeries. Dr. Johnson reviewed the MRIs of Tackett's cervical, thoracic, and lumbar spine, and he noted no evidence of disk herniation, spinal stenosis, or chord compression of the cervical spine. His physical evaluation revealed a non-antalgic gait, 5/5 strength, 3/4 reflexes, and no evidence of cervical or thoracic sensory level deficits. He assessed Tackett with T8 syrinx and mild thoracic stenosis at level T12-L1. (Tr. 308-10). In February 2013, Tackett displayed normal gait, good motor strength in both legs, and no sensory deficits. (Tr. 330). Her MRI remained mainly unchanged, but it did show a disk protrusion at T12-L1 with no evidence of neural impingement. (Tr. 324). Dr. Johnson recommend managing Tackett's condition conservatively, and he advised her to return if she began experiencing increased pain or difficulty with her gait. (Tr. 330).

Tackett returned to Dr. Johnson in October 2014, complaining of increased pain and numbness in her right hand. Upon examination, Tackett displayed non-antalgic gait, 5/5 strength, and no significant cervical or thoracic sensory level deficits. She

tested negative for carpal tunnel syndrome.  She displayed some guarding and limited motion in the right shoulder and pain during range of motion of the cervical spine. Her cervical x-rays showed solid post-surgical fusion, and her MRI showed no chord compression.  Dr. Johnson noted that although Tackett continued to complain of chronic neck pain, he did not recommend a fourth surgery.  Rather, he prescribed physical therapy.  (Tr. 1008-11).[6]  In sum, Dr. Johnson's examinations, findings and impressions do not support the extreme limitations Dr. Morrow assessed.

The ALJ gave substantial weight to the consultative examinations Dr. Laura Lindsey, a family medicine doctor, conducted in September 2012 and September 2015. (Tr. 399, 401, 406).  During both examinations, Tackett displayed a pleasant mood and no acute distress.  (Tr. 317, 1072).  She did not complain of pain to palpation of the cervical, thoracic, or lumbar spine, and she displayed 5/5 motor strength in her arms and legs.  (Tr. 318, 1073).  She sat, rose and exited the examination table without difficulty, exhibited normal gait, and ambulated independently.  (Tr. 318, 1073).  She could squat and perform heel-to-toe walking without difficulty.  (Tr. 318, 1073).  She displayed slightly limited range of motion, normal deep tendon reflexes, and intact sensation.  (Tr. 318, 1073).  As a result of her examinations, Dr. Lindsey concluded that Tackett did not appear to suffer limitations from her medical issues, but her pain

---

[6] Dr. Johnson also recommended another doctor for a possible occipital nerve injection (R. 1088), but the record contains no records of Tackett following up on this recommendation.

medications would limit her in some jobs.  (Tr. 319, 1074).

The ALJ also afforded substantial weight to the consultative findings of Dr. Eston Norwood, a neurologist, who examined Tackett on December 8, 2016, after Judge Proctor remanded her case to the Commissioner for further consideration. During the examination, Tackett displayed cervical and lumbar range of motion at 80% of the normal range.  She walked with only a slightly antalgic gait, and she displayed normal motor strength in her arms and legs, with normal sensation and symmetrical reflexes.  She rose from a seated position without difficulty, and she displayed no difficulty using her hands.  Dr. Norwood observed no evidence of muscle spasms.  An EMG and nerve conduction velocity study of Tackett's right arm and leg detected no evidence of cervical and lumbosacral radiculopathy, peripheral neuropathy, or carpal tunnel syndrome.  (Tr. 1105).  Dr. Norwood concluded that Tackett possessed no neurological deficits that would cause an impairment of her ability to perform work-related activities such as sitting, standing, walking, lifting, carrying, and handling objects, although her pain might limit her.  (Tr. 1105-11).

Finally, the ALJ reviewed the treatment notes of neurosurgeon Dr. Daniel Harmon.  (Tr. 1228-47).  During her first visit on July 5, 2017, Tackett reported neck pain, bilateral arm pain, and numbness in her fingers.  She walked with a cane, but she experienced no acute distress.  During the examination, Tackett displayed slow gait, 4+/5 strength in both arms and right leg, and 4-/5 strength in her left leg.  Dr. Harmon

17

assessed Tackett as suffering from "other spondylosis with radiculopathy, cervical region." (Tr. 1233-35). A CT scan and myelogram on July 20, 2017, revealed some moderate right-sided stenosis at C3-C4 with no evidence of central spinal stenosis, and Tackett's physical examination remained unchanged from the previous visit. (Tr. 1245). On July 31, 2017, Dr. Harmon surgically removed a plate at C6-C7. (Tr. 1228, 1235). In August 2017, Dr. Harmon reported Tackett was doing well, and he prescribed physical therapy. (Tr. 1228, 1230). Tackett did not return to Dr. Harmon, although he recommended following up at six weeks after her August 2017 appointment. (Tr. 1228).

Based on the foregoing discussion, the court concludes that the ALJ did not err in assigning little to no weight to Dr. Morrow's opinions. The ALJ clearly articulated his reasons for doing so, and good cause exists for the ALJ's decision. As discussed above, Dr. Morrow's opinions regarding Tackett's limitations and ability to work lacked support in his own records and the records of the other treating and examining physicians.

## II.   The ALJ Properly Considered Tackett's Subjective Complaints of Pain and Resulting Limitations

Tackett also argues that the ALJ improperly considered her subjective complaints of pain and resulting limitations. The court concludes the ALJ properly applied the

Eleventh Circuit's standard for evaluating subjective limitations, and substantial evidence supported the ALJ's decision.

> "To establish disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing: '(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.'"

*Zuba-Ingram v. Comm'r of Soc. Sec.*, 600 F. App'x 650, 656 (11th Cir. 2015) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (*per curiam*)).   A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).

Social Security Ruling ("SSR") 16-3p, effective March 28, 2016, and republished October 25, 2017, eliminated the use of the term "credibility" as it relates to assessing the claimant's complaints of pain and clarified that the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p, 2017 WL 5180304, *7 (Oct. 25, 2017).   An ALJ rendering findings regarding a claimant's subjective symptoms may consider a variety of factors, including: the claimant's daily activities; symptom location, duration, frequency, and intensity; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; and other factors concerning

functional limitations and restrictions due to symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), (4).

SSR 16-3p further explains that the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, at *9; *see also Wilson*, 284 F.3d at 1225 (if an ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so.").

Tackett testified during the last administrative hearing that she prepares her daughter for school each day, and then either drives her to school or rides along while someone else drives. (Tr. 469-70). She had not lifted her child since the child was a year old. (Tr. 472). After the child goes to school, Tackett lies down on a heating pad or in a recliner with her legs elevated three to four hours each day. (Tr. 473). Chronic neck, back, and knee pain prevent her from working because she suffers limited mobility. (Tr. 474). She can only stand for thirty minutes to one hour, and sit for thirty minutes to one hour, before needing to lie down due to pain. (Tr. 475-76). She suffers level-ten pain without medication and level-seven or -eight pain with medication. (Tr. 477).

The ALJ accurately summarized Tackett's hearing testimony. (Tr. 397-98). He also appropriately applied the Eleventh Circuit's pain standard, finding that Tackett's medically determinable impairments could reasonably be expected to produce the

alleged symptoms, but her statements regarding the intensity, persistence, and limiting effects of these symptoms did not comport with the medical evidence and other evidence in the record.  (Tr. 417).  Specifically, the ALJ stated:

> considering the inconsistencies noted by the physicians, [Tackett's] inconsistent testimony, [and Tackett's] daily activities, the undersigned must conclude that the objective evidence does not confirm either the severity of [Tackett's] alleged symptoms arising from the diagnosed conditions, or that this condition could reasonably be expected to give rise to the symptoms alleged by [Tackett].  The undersigned thus finds it reasonable, given [Tackett's] diagnoses, her physicians' observations, [and] objective tests, that her pain is no more than moderate with medication.

(*Id*.).  As discussed below, the ALJ articulated sufficient reasons for his decision, and substantial evidence supports his finding.

The ALJ thoroughly summarized Tackett's medical records.  Those records, as discussed in detail above, undermine her subjective complaints and do not indicate that she suffered the severe limitations she claims. *See Belle v. Barnhart*, 129 F. App'x 558, 560 (11th Cir. 2005) (normal findings on examination supported ALJ's decision to discount claimant's subjective complaints); 20 C.F.R. 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms . . . may have on [a claimant's] ability to work.").

The court disagrees with Tackett's contention that the ALJ "decided to 'play doctor' and substituted his own opinions for the opinions of certified medical

professionals that personally examined [Tackett] on numerous occasions." (Doc. 9, at 21). Rather, the medical records and opinions, with the exception of Dr. Morrow's, support the ALJ's decision, and the court has already determined that the ALJ demonstrated good cause for rejecting Dr. Morrow's opinions.

In her reply brief, Tackett cites to her use of a cane and her "slightly antalgic" gait as medical evidence supporting her limitations. (Doc. 11, at 8-9). The ALJ acknowledged both facts, but the vast majority of the longitudinal treatment records, as detailed above, indicate normal strength and gait. Moreover, there exists no medical documentation explaining the medical necessity of Tackett using a cane.[7] Indeed, the record contains only two passing notations regarding her use of a cane. (Tr. 1235, 1240). Even if Tackett had pointed to documentation showing a medical necessity to use the cane for ambulation, cane usage and a single notation of "slightly antalgic' gait do not deprive the ALJ's decision of substantial evidence, in light of the other medical evidence indicating her good muscle strength and unimpaired gait.

Additionally, the ALJ noted Tackett's inconsistent statements in the record to discredit her subjective complaints of pain, including:

- Tackett told Dr. Lindsey that she had no cartilage in her knees, but an MRI in 2014 only showed chondromalacia degenerative changes. (Tr. 316, 380, 415).

---

[7] To find that a hand-held assistive device, such as a cane, is medically required, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96–9p.

- Tackett testified that she did not improve after her latest surgery in July 2017; however, Dr. Harmon's medical records note that Tackett stated she was doing well after the surgery. (Tr. 415, 481, 1228).
- Tackett testified she has not lifted her daughter since she was a baby, but she reported on her paperwork that she feeds her daughter, changes her diapers, bathes her and dresses her. (Tr. 246, 415, 472).

The ALJ permissibly considered Tackett's inconsistent statements, and substantial record evidence supported the ALJ's decision. *See* SSR 16-3p, at *8 ("In determining whether an individual's symptoms will reduce his or her corresponding capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner, we will consider the consistency of the individual's own statements. To do so, we will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances.").

The ALJ also found that Tackett's daily activities did not support her allegations of disabling pain. Specifically, the ALJ noted Tackett cares for all her own personal needs, including dressing herself, driving, shopping, and doing some housework. She also takes care of her young child, albeit with help from her husband and mother. While the court agrees with Tackett that these daily activities do not in and of themselves equate to the ability to perform full-time work, the ALJ did not consider these activities in a vacuum. Instead, when combined with the other evidence of record, the ALJ concluded the activities undermined Tackett's subjective complaints. (Tr. 415-17).

23

That determination found support both in applicable law and in the record evidence. *See Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. 2010) ("Although a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability . . ., that does not mean it is improper for the ALJ to consider a claimant's daily activities at all.") (citations omitted); 20 C.F.R. § 404.1529(c)(3)(i) (stating that an ALJ may consider a claimant's daily activities in evaluating the limiting effects of her impairments).

Because evaluating the consistency of a claimant's subjective complaints with the other record evidence remains "the province of the ALJ," *Moore*, 405 F.3d at 1212 (citation omitted), the court cannot characterize the ALJ's decision to discredit Tackett's testimony regarding her subjective complaints of pain as "clearly wrong." *See also Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."). As discussed above, the ALJ provided a detailed factual basis for his finding, and the objective medical evidence does not support the severity of Tackett's complaints. For these reasons, the court finds no error with regard to the ALJ's application of the pain standard.

## CONCLUSION

For the reasons set forth above, the court concludes that the ALJ applied proper legal standards, and substantial evidence supports his decision that Tackett did not

24

suffer a disability.   Accordingly, the court **AFFIRMS** the Commissioner's decision.

The court will enter a separate final judgment.

      **DONE** this 24th day of July, 2020.

                                                      _____

                                              HERMAN N. JOHNSON, JR.
                                              UNITED STATES MAGISTRATE JUDGE